## UNITED STATES PATENT AND TRADEMARK OFFICE (USPTO)
### OFFICE ACTION (OFFICIAL LETTER) ABOUT APPLICANT'S TRADEMARK APPLICATION

**APPLICATION SERIAL NO.** 77/752328

**MARK:** FOOTLONG

**\*77752328\***

**CORRESPONDENT ADDRESS:**
VALERIE A. POCHRON
DOCTOR'S ASSOCIATES INC.
325 BIC DR
MILFORD, CT 06461-3072

CLICK HERE TO RESPOND TO THIS LETTER:
http://www.uspto.gov/teas/eTEASpageD.htm

**APPLICANT:** Doctor's Associates Inc.

**CORRESPONDENT'S REFERENCE/DOCKET NO:**
DAIUSTM/077

**CORRESPONDENT E-MAIL ADDRESS:**

## OFFICE ACTION

### STRICT DEADLINE TO RESPOND TO THIS LETTER
TO AVOID ABANDONMENT OF APPLICANT'S TRADEMARK APPLICATION, THE USPTO MUST RECEIVE APPLICANT'S COMPLETE RESPONSE TO THIS LETTER **WITHIN 6 MONTHS** OF THE ISSUE/MAILING DATE BELOW.

**ISSUE/MAILING DATE:**

### Introduction

This Office action supplements any previous Office actions issued in this application. Upon further review, the following issues have been raised and must be addressed. The Office apologizes for any inconvenience this may cause. Applicant must respond to all issues within six months from the date of this new Office action in order to avoid abandonment of the application. TMEP §1104.09(h).

### Descriptive Refusal under Section 2(e)(1)

The descriptive refusal under Trademark Act Section 2(e)(1) is reinstated.

Registration is refused because the applied-for mark merely describes a feature of applicant's goods and/or services. Trademark Act Section 2(e)(1), 15 U.S.C. §1052(e)(1); *see* TMEP §§1209.01(b), 1209.03 *et seq.*

EXHIBIT C

A mark is merely descriptive if it describes an ingredient, quality, characteristic, function, feature, purpose or use of the specified goods and/or services. TMEP §1209.01(b); *see In re Steelbuilding.com*, 415 F.3d 1293, 1297, 75 USPQ2d 1420, 1421 (Fed. Cir. 2005); *In re Gyulay*, 820 F.2d 1216, 1217-18, 3 USPQ2d 1009, 1010 (Fed. Cir. 1987). In this case, the mark describes a feature of applicant's restaurant services, because it describes the type of food or dish served at applicant's restaurant.

Applicant has applied to register the mark FOOTLONG for restaurant services. According to the specimens of record, applicant provides restaurant services featuring submarine (sub) sandwiches. The mark is descriptive of the type of food that applicant's restaurant serves, namely submarine sandwiches, because it describes the length/size of the subs, referring to the fact that the subs are 12 inches or 1 foot long. "Footlong" is a well known term for 12 inch sandwiches and hot dogs. See attached evidence, including evidence entitled "NPR," acknowledging that sandwiches that are 12 inches long are commonly referred to as "foot long," and Wiktionary entry that defines "footlong" as being one foot long.

As further evidence of descriptiveness, attention is directed to multiple webpages attached showing the mark being used descriptively to refer to food items such as sandwiches and hot dogs that are 12 inches in length. Specifically, please note Wikipedia entry in which applicant's sandwiches are referred to descriptively as "footlongs": "All footlongs were available for $5"; "customer response prompted Subway to create a permanent *Five Dollar Foot-long Everyday Value Menu* that includes 8 footlong sandwiches"; "Customers would receive special stamps with the purchase of a sandwich, earning one stamp for a six-inch sandwich and two for a foot-long." See attached.

As shown in the attached evidence, the term "footlong" is commonly used, not only as an adjective to describe the size of sandwiches (e.g. a footlong sandwich, footlong hot dog), but also as a noun generically to refer to the sandwich itself (e.g. "twenty-four stamps for a free foot-long," "where most of choices--dogs, turkey dogs, footlongs, bratwurst--are under $2.50"). See attached Wikipedia evidence and LexisNexis article entitled "Bargains as easy as un deux trois." Being potentially generic for applicant's menu item, the mark FOOTLONG is highly descriptive for applicant's restaurant services.

And finally, please note the numerous restaurant menus, restaurant webpages, recipes, and articles using the term "footlong" to describe sandwiches and hot dogs that are one foot long. See attached. Clearly, the evidence shows that the mark is and has been widely used descriptively, if not generically, in the food and restaurant industries for many years.

A mark that consists of the generic name of a dish that is served at the restaurant has been held merely descriptive of restaurant services. *See In re Fr. Croissant, Ltd.*, 1 USPQ2d 1238 (TTAB 1986) (holding LE CROISSANT SHOP merely descriptive of restaurant services providing croissants); *In re Le Sorbet, Inc.*, 228 USPQ 27 (TTAB 1985) (holding LE SORBET descriptive of restaurant and carryout shops which serve fruit ices); TMEP §1209.03(r).

The determination of whether a mark is merely descriptive is considered in relation to the identified goods and/or services, not in the abstract. *In re Abcor Dev. Corp.*, 588 F.2d 811, 814, 200 USPQ 215, 218 (C.C.P.A. 1978); TMEP §1209.01(b); *see, e.g., In re Polo Int'l Inc.*, 51 USPQ2d 1061 (TTAB 1999) (finding DOC in DOC-CONTROL would be understood to refer to the "documents" managed by applicant's software, not "doctor" as shown in dictionary definition); *In re Digital Research Inc.*, 4 USPQ2d 1242 (TTAB 1987) (finding CONCURRENT PC-DOS merely descriptive of "computer

programs recorded on disk" where relevant trade used the denomination "concurrent" as a descriptor of a particular type of operating system). "Whether consumers could guess what the product is from consideration of the mark alone is not the test." *In re Am. Greetings Corp.*, 226 USPQ 365, 366 (TTAB 1985).

"A mark may be merely descriptive even if it does not describe the 'full scope and extent' of the applicant's goods or services." *In re Oppedahl & Larson LLP*, 373 F.3d 1171, 1173, 71 USPQ2d 1370, 1371 (Fed. Cir. 2004) (citing *In re Dial-A-Mattress Operating Corp.*, 240 F.3d 1341, 1346, 57 USPQ2d 1807, 1812 (Fed. Cir. 2001)); TMEP §1209.01(b). It is enough if the term describes only one significant function, attribute or property. *In re Oppedahl*, 373 F.3d at 1173, 71 USPQ2d at 1371; TMEP §1209.01(b). In this case, the mark describes a significant attribute of restaurant services in that it describes a menu item served by the restaurant, foot long sandwiches.

Two major reasons for not protecting descriptive marks are (1) to prevent the owner of a descriptive mark from inhibiting competition in the marketplace and (2) to avoid the possibility of costly infringement suits brought by the trademark or service mark owner. *In re Abcor Dev. Corp.*, 588 F.2d 811, 813, 200 USPQ 215, 217 (C.C.P.A. 1978); TMEP §1209. Businesses and competitors should be free to use descriptive language when describing their own goods and/or services to the public in advertising and marketing materials. *See In re Styleclick.com Inc.*, 58 USPQ2d 1523, 1527 (TTAB 2001).

Although applicant's mark has been refused registration, applicant may respond to the refusal(s) by submitting evidence and arguments in support of registration.

### Acquired Distinctiveness under Section 2(f)

Previous acceptance of applicant's claim of acquired distinctiveness of its mark under Trademark Act Section 2(f) is withdrawn due to insufficient evidence, because applicant has failed to show substantially exclusive use of the term FOOTLONG. Although use of the mark does not have to be exclusive to claim distinctiveness, the use must be substantially exclusive. TMEP § 1212.05(b). *Target Brands, Inc. v. Hughes*, 85 USPQ2d 1676, 1682-83 (TTAB 2007) (Substantial use of mark by opposer's parent company and additional use of mark by numerous third parties "seriously undercuts if not nullifies applicant's claim of acquired distinctiveness."); *Marshall Field & Co. v. Mrs. Fields Cookies*, 11 USPQ2d 1355, 1357-58 (TTAB 1989) ("[T]he existence of numerous third party users of a mark, even if junior, might well have a material impact on the Examiner's decision to accept a party's claim of distinctiveness."); *Flowers Industries Inc. v. Interstate Brands Corp.*, 5 USPQ2d 1580, 1588-89 (TTAB 1987) ("[L]ong and continuous use alone is insufficient to show secondary meaning where the use is not substantially exclusive.").

As evidence that applicant has not substantially exclusively used the mark, attached are numerous restaurant menus, restaurant webpages, recipes, and articles using the term "footlong" to describe sandwiches and hot dogs that are one foot long. See attached. Clearly, the evidence shows that the mark is and has been widely used descriptively, if not generically, in the food and restaurant industries for many years. Thus, applicant has failed to use the mark FOOTLONG exclusively to have acquired distinctiveness.

Additionally, in showing acquired distinctiveness under Section 2(f), the nature of the use of the mark

must have been proper trademark usage in connection with the applied-for services. According to TMEP § 1212.05(c), "[t]he substantially exclusive and continuous use must be "as a mark." 15 U.S.C. §1052(f). *See In re Craigmyle*, 224 USPQ 791 (TTAB 1984) (registrability under §2(f) not established by sales over a long period of time where there was no evidence that the subject matter had been used as a mark); *In re Kwik Lok Corp.*, 217 USPQ 1245, 1248 (TTAB 1983) (declarations as to sales volume and advertising expenditures held insufficient to establish acquired distinctiveness. "The significant missing element in appellant's case is evidence persuasive of the fact that the subject matter has been used as a mark."). Merely using the mark for extended period of time is insufficient, if the use is not considered proper trademark use in connection with the applied-for services.

In this case, applicant failed to use FOOTLONG as a proper trademark, and applicant failed to use it for restaurant services. In applicant's attached menus and promotional materials, applicant used the wording FOOTLONG in descriptive manners and not as a trademark. For example, in promotional materials submitted to this Office on October 16, 2009: newspaper ad states "Famous Foot-Long Sandwiches"; restaurant banner states "All Footlong Subs $5"; poster ad states "$5 Footlongs"; restaurant sinage states "Giant Foot Long Sandwiches." Applicant has used the mark in descriptive manner in its own advertisements over the years and thus has failed to show proper trademark usage of the term FOOTLONG.

Finally, applicant has failed to use the mark for the applied-for services, namely, restaurant services. In all of applicant's evidence showing use of the mark, FOOTLONG is used to refer to a menu item, namely, a sandwich. Thus, applicant has failed to use the mark in connection with restaurant services. Therefore, applicant's claim of distinctiveness is refused.

The amount and character of evidence needed to establish acquired distinctiveness depends on the facts of each case and particularly on the nature of the mark sought to be registered. *Roux Labs., Inc. v. Clairol Inc.*, 427 F.2d 823, 829, 166 USPQ 34, 39 (C.C.P.A. 1970); *see In re Hehr Mfg. Co.*, 279 F.2d 526, 126 USPQ 381 (C.C.P.A. 1960); TMEP §1212.05(a). In this case, the term "footlong" is descriptive/generic for foot long sandwiches (see above). And no amount of purported proof that a generic term has acquired secondary meaning can transform that term into a registrable trademark. Such a designation cannot become a trademark under any circumstances. *See In re Bongrain*, 894 F.2d at 1317 n.4, 13 USPQ2d at 1728 n.4; *H. Marvin Ginn Corp. v. Int'l Ass'n of Fire Chiefs, Inc.*, 782 F.2d 987, 989, 228 USPQ 528, 530 (Fed. Cir. 1986); TMEP §1212.02(i). While the mark is not generic for restaurant services, because it is generic for the type of main food item served at applicant's restaurant, the mark is highly descriptive of the applied for services.

More evidence is required where a mark is so highly descriptive that purchasers seeing the matter in relation to the named goods and/or services would be less likely to believe that it indicates source in any one party. *See, e.g., In re Bongrain Int'l Corp.*, 894 F.2d 1316, 13 USPQ2d 1727 (Fed. Cir. 1990); *In re Seaman & Assocs., Inc.*, 1 USPQ2d 1657 (TTAB 1986). In this case, because of the highly descriptive nature of the mark and ubiquitous usage of the mark in the food and restaurant industries, the mark has not been used exclusively by applicant. Therefore, applicant has failed to acquire distinctiveness in the mark.

## Specimen

The specimen is not acceptable because it does not show the applied-for mark used in connection with any

of the goods and/or services specified in the application. An application based on Trademark Act Section 1(a) must include a specimen showing the applied-for mark in use in commerce for each class of goods and/or services. Trademark Act Sections 1 and 45, 15 U.S.C. §§1051, 1127; 37 C.F.R. §§2.34(a)(1)(iv), 2.56(a); TMEP §§904, 904.07(a).

In this case, the specimens do not show the mark being used in connection with restaurant services. The specimens of record show the mark as a menu item, namely, a type of submarine sandwich. Thus, the mark is used in connection with a particular type of food in Class 030 rather than a type of service in Class 043.

Therefore, applicant must submit the following:

> (1) A substitute specimen showing the mark in use in commerce for each class of goods and/or services specified in the application; and

> (2) The following statement, verified with an affidavit or signed declaration under 37 C.F.R. §2.20: "**The substitute specimen was in use in commerce at least as early as the filing date of the application.**" 37 C.F.R. §2.59(a); TMEP §904.05; *see* 37 C.F.R. §2.193(e)(1). If submitting a substitute specimen requires an amendment to the dates of use, applicant must also verify the amended dates. 37 C.F.R. §2.71(c); TMEP §904.05.

Examples of specimens for goods are tags, labels, instruction manuals, containers, photographs that show the mark on the actual goods or packaging, or displays associated with the actual goods at their point of sale. *See* TMEP §§904.03 *et seq.* Examples of specimens for services are signs, photographs, brochures, website printouts or advertisements that show the mark used in the actual sale or advertising of the services. *See* TMEP §§1301.04 *et seq.*

If applicant cannot satisfy the above requirements, applicant may amend the application from a use in commerce basis under Section 1(a) to an intent to use basis under Section 1(b), for which no specimen is required. *See* TMEP §806.03(c). However, if applicant amends the basis to Section 1(b), registration will not be granted until applicant later amends the application back to use in commerce by filing an acceptable allegation of use with a proper specimen. *See* 15 U.S.C. §1051(c), (d); 37 C.F.R. §§2.76, 2.88; TMEP §1103.

To amend to Section 1(b), applicant must submit the following statement, verified with an affidavit or signed declaration under 37 C.F.R. §2.20: "**Applicant has had a bona fide intention to use the mark in commerce on or in connection with the goods and/or services listed in the application as of the filing date of the application.**" 37 C.F.R. §2.34(a)(2); TMEP §806.01(b); *see* 15 U.S.C. §1051(b); 37 C.F.R. §§2.35(b)(1), 2.193(e)(1).

Pending receipt of a proper response, registration is refused because the specimen does not show the applied-for mark in use in commerce as a trademark and/or service mark for the identified goods and/or services. Trademark Act Sections 1 and 45, 15 U.S.C. §§1051, 1127; 37 C.F.R. §§2.34(a)(1)(iv), 2.56(a); TMEP §§904, 904.07(a).

**Declaration**

To submit a verified substitute specimen online via the Trademark Electronic Application System (TEAS), applicant should do the following: (1) answer "yes" to the TEAS response form wizard questions to "submit a new or substitute specimen" and for a "signed declaration," respectively; (2) attach a jpg or pdf file of the substitute specimen; (3) select the statement that "The substitute specimen(s) was in use in commerce at least as early as the filing date of the application."; and (4) properly sign the declaration appearing towards the end of the TEAS response form.

To sign the declaration at the end of the TEAS response form, applicant can do one of the following: (1) enter in the signature block any combination of letters, numbers, spaces and/or punctuation marks that the filer has adopted as a signature, placed between two forward slash (/) symbols (e.g., /john doe/); (2) e-mail the completed form from within TEAS to a second party for his/her electronic signature, which will then be automatically returned to the original preparer for submission with the response form; or (3) attach a jpg or pdf image of a declaration under 37 C.F.R. §2.20 together with a pen-and-ink signature. *See* 37 C.F.R. §§2.33(d), 2.59(a), 2.193(c)(1)(iii); TMEP §804.05. When signing the declaration, applicant must either personally sign or manually enter his/her electronic signature and provide the date of "signing." TMEP §804.05; *see* TMEP §804.01(b). Applicant should also set forth the signatory's name and position beneath the signature. *See* TMEP §§712 *et seq.*, 804.05.

If applicant experiences difficulty in submitting the required substitute specimen, supporting statement and/or declaration, please e-mail TEAS@uspto.gov for technical assistance regarding the TEAS response form.

/W. Wendy Jun/
Trademark Examining Attorney
Law Office 103
Phone - 571-272-8810
Fax No. 571-273-8810
wendy.jun@uspto.gov

**TO RESPOND TO THIS LETTER:** Use the Trademark Electronic Application System (TEAS) response form at http://teasroa.uspto.gov/roa/. Please wait 48-72 hours from the issue/mailing date before using TEAS, to allow for necessary system updates of the application. For *technical* assistance with online forms, e-mail TEAS@uspto.gov.

**WHO MUST SIGN THE RESPONSE:** It must be personally signed by an individual applicant or someone with legal authority to bind an applicant (i.e., a corporate officer, a general partner, all joint applicants). If an applicant is represented by an attorney, the attorney must sign the response.

**PERIODICALLY CHECK THE STATUS OF THE APPLICATION:** To ensure that applicant does not miss crucial deadlines or official notices, check the status of the application every three to four months using Trademark Applications and Registrations Retrieval (TARR) at http://tarr.uspto.gov/. Please keep a copy of the complete TARR screen. If TARR shows no change for more than six months, call 1-800-786-9199. For more information on checking status, see http://www.uspto.gov/trademarks/process/status/.

**TO UPDATE CORRESPONDENCE/E-MAIL ADDRESS:** Use the TEAS form at http://www.uspto.gov/teas/eTEASpageE.htm.